has before it three cases on the argument list. Before calling the first case, I would like to acknowledge the thanks of the court to our colleague, Senior Judge Friedman, who is on this panel replacing Judge Richard Lynn, who underwent some back surgery recently. So thank you, Judge Friedman. The first case on the oral argument list is Appeal No. 05-1351, Philips Electronics v. Contec Corporation. Mr. Blumenfeld, good morning. Please proceed. Thank you, Your Honor. May it please the court, Jack Blumenfeld for Defendant Compro Microtech. And in my first ten minutes, I'd like to reserve five for the cross-appeal. In the first ten minutes, I'd like to address two things. One, the meaning of signal structure identification data, because that is dispositive of an infringement issue one way or the other. And if time permits, which I will, a couple minutes on the damages issue. Claim one of the 359 patent requires command signals to be generated at least in part by the category signal and the stored signal structure identification data that came about as a result of a 1987 amendment. And the amendment conformed the claim language to the only mentions in the specification of what signal structure identification data is. It's used the same way it is anywhere in the specification. The specification always describes the product code tables being accessed by the category signal together with the signal structure identification data. That's the only description. I'll get back to that, I hope, but it's in columns two and again in columns four, five, and six. In fact, the specification repeatedly refers to the signal structure identification data as a specific device table pointer or as a specific device pointer. Well, if the claim language, which seems on its face to me, at least the district court's interpretation of it on its face, seems reasonable, if it has that more limited meaning that you ascribed to it, why didn't they say that in the claim? Well, Your Honor, two responses to that. One, the claim originally said, before it was amended in 1987 or actually replaced with an amended claim, it referred to product identification data rather than signal structure identification data. But under the district court's interpretation, if you are interpreting the original claim language, it would be data identifying the product. And that was removed and two things were done. They added the category signal provision at that time and they said at least in part by the category signal and they replaced the product information data with the signal structure identification data, which I hope to get to this, which is defined in the specification as a specific device pointer, which is part of an address to access a product table. And that, we think, is where the judge went wrong. And this was an opinion before Phillips and before opinions like last week's On Demand versus Ingram opinion. And what the judge said was that it meant any data identifying the signal structure, but he did that by applying dictionary definitions and he said he was doing that. In fact, what he said, this is at page A90, that it is proper to discern the ordinary and customary meaning attributed to words themselves before considering the intrinsic evidence. And that's what he did. He looked at dictionary definitions for information and for data without first considering the intrinsic evidence. He applied them and then he said that it was our burden to show that something other than ordinary meaning applies. And I think I can show that something other than ordinary meaning applies here and I think the issue is whether after Phillips and after On Demand and after other cases since Phillips, signal structure identification data should be construed the only way it's used in the specification and that is something that is used together with the category signal as a pointer to address the product code tables. But Mr. Blumfeld, what is the actual difference between the product identification data, which was part of the original claim, right? Well, the product identification data, there are product code tables defined in the patent. They're in EPROM 16. And the way that this was originally defined, it just said product information data, which is the entire product information data. The way that things are defined now, signal structure identification data, which is part of an address to a product code. And that's the difference. And the reason this is important is because unlike the patent, in the COMPO microtech devices, there is no pointer to a product code. It goes directly to a command code, which has the data for the entire thing. It doesn't have a product code, which then goes to a command code. But doesn't it go directly to the address? What was that? Doesn't it go directly to the address of the code? Doesn't what go directly to? The product identification data. Well, I'm not sure what the product identification data is because it's not a term used in the claim and it's not a term that we use in connection with, you know, in this patent. What the patent talks about is signal structure identification data, which is something which is part of the address to the product code, as opposed to the entire address. As I understand it, there are two ways that you can implement the universal control. You can have the product identification, which you can play from the unit itself and set that on the unit. Then the universal control will be able to control that unit. Then you have a second way of doing it, and you do it directly from the universal unit. And you put in the actual signal, and the signal comes in from the universal unit to the controlled unit. Isn't that the same method of doing it, whether you do it from the unit itself or from the universal unit? Your Honor, I don't think it is the same method. The difference is that in the patent there are product code tables, which are addressed by the category signal and by the signal structure identification data. Those are then used to address the command signal, which addresses the appliance by an infrared signal. Are you using the term address for the purposes of a location address on the matrix, or are you saying to address that particular signal? It is to address a location. It's a pointer to a location in memory, and that's the way it's defined. If I could get right into that, looking at the patent, we pointed heavily in our brief to column two, which talks about a particularly preferred embodiment where the SOARD signal structure identification data constitutes part of an address, the remainder of the address being provided by user selection of the category to which the appliance belongs. And that is a particularly preferred embodiment, but it's also the only embodiment in the patent. What lines are you reading in column two? I'm sorry, Your Honor. It's column two, starting at lines 35. I just read from 35 to 39. And then at 40, it says the above-mentioned address is used to address one table in a multiplicity of product code tables. Those are the tables that CompoMicroTech doesn't have in its device. I don't understand your argument. You seem to be saying the claims necessarily must be limited to the precise scope of the one disclosed preferred embodiment. But you can't say that because our case law says that's not so. No, Your Honor, that's not what I'm saying. Then what are you exactly saying? There are two things I'm saying. One, the preferred embodiment is the only embodiment in this patent, and that's one issue. But the second issue is, I think especially after Philips and after On Demand last week, the question is what would a person skilled in the art understand that signal structure identification data means from reading the specification? And if you go on past the particularly preferred embodiment to the rest of the specification, and I'll start at column four and just go to a few places in column five also, column four, starting at line 20, it says EPROM 16 contains product code for specific device lookup tables indexed by the category selected. Isn't that just another example of the same thing? I don't think so, Your Honor, because what it's doing here is it's defining the product code as being a specific device code and then telling how it's used. In a preferred embodiment? Well, it doesn't say in a preferred embodiment. It says in the present invention. That's how at the bottom of column two, the present invention, and the top of column three it says the present invention. But more importantly, and I'll get to this in column five and six, it actually defines signal structure identification code as being a specific device pointer. And if you look at column five, lines 46 to 50, it says this category number plus a specific device table pointer, parent storage signal structure identification data, also stored in RAM 44, together form an address used to access the product code tables in EPROM 16. And what it's doing there, what the specification is doing, is saying that the stored signal structure identification data is a specific device table pointer. It just said earlier in the portion I read that a specific device refers to the product code. And what it's saying is that the signal structure identification code is a specific device pointer to a location in the product code table, which is used together with the category signal to access that. I understand what the use you're making of the examples is, but it seems to me that every such example you give has the same defect in it. You're saying that the broader claim language has to be cut down to fit detailed descriptions of the preferred embodiment scattered throughout the specification. It doesn't seem to me that that's a tenable argument. I also don't understand your argument where you keep talking about Phillips. Are you saying that Judge Jordan couldn't possibly have gotten the claim constructions right because he didn't have the Phillips case in front of him since his construction here preceded the issuance of Phillips? No, absolutely not. Are you saying that a reference to a dictionary is per se reversible error? No, I'm not saying that. Then what are you exactly saying that relates to Phillips or any other recent case? All I'm saying is that his decision was a pre-Phillips decision, that his methodology was to look first to dictionary definitions to get ordinary DNA. And therefore what? Looking first is a per se error? No, I don't think it's a per se error. Then what is it? But what I think he didn't do was then use the intrinsic evidence which says that signal structure identification data is a specific device pointer. And I'm not saying that. You pointed that out to him, I'm sure. He weighed it, I'm sure. True, he didn't agree with your preferred construction in his ruling. But that's what happens in every litigation every day. One side loses. So he isn't wrong just because he didn't adopt your conclusion. And you haven't shown that he didn't consider your examples. Well, he did consider certainly the example in column two and he said it was a preferred embodiment and he wasn't importing it. What he didn't consider was the parts of the specification. What do you mean he didn't consider? You mean he didn't discuss every example you gave and therefore you posit he didn't even think about it? Well, what he said he was doing was using the ordinary meaning of dictionary definitions. What he didn't discuss in his opinion, I can't say he didn't consider it, was the parts of the specification which refer to the signal structure identification data as being a specific device pointer used in conjunction with a category signal to address a product code table. Well, isn't basically what he did was he looked at this and he said, well, these words are relatively simple words and they're rather broad words and I'm not going to limit them to the precise indication, precise examples given in the specification. And what's wrong with that? I guess that's what Michelle would ask. There's a difference, I believe, between not limiting things to a preferred embodiment and not using the terms as they're defined in the specification. You say defined, but that's a very loaded word. There is no explicit definition section here as there sometimes is in a statute. You're saying the way you read the patent, you think that implicitly the claim phrases are being narrowly defined by that language. Well, all I'm saying, Judge, is that in Column 5 when it says signal structure identification data, it uses it in parenthesis after specific device table pointer. The same at the bottom of Column 6, it says source signal structure identification data. It's not arguable what it says. What's arguable is whether that's a universal definition to govern all interpretation of all words in the claims, even if they're broader on their face. Right. And I would argue that when it's used that way and when it's the only way that the term is used in the specification, that it is limited to that. That's certainly the takeaway that I got from the on-demand case from the opinion that came down from this Court last Friday. Maybe takeaway is not a good mode of analysis. It's certainly said that the invention has to be limited to what is disclosed in the specification, and there is nothing disclosed in the specification here aside from that definition of signal structure identification data. All right. I think I've used my time. You've used all of your time and all of your rebuttal time, in fact. No, I think I saved five minutes for rebuttal. No, you saved it and then you used it. That's what the yellow light is. We'll give you a few minutes to rebut. Mr. Beeney? Thank you, Your Honor. May it please the Court, if Your Honor is pleased, what I would like to do this morning is to spend just a couple of minutes with respect to the issues that were just discussed on the construction of the 359 and then to open it up. That's the only thing you can properly do. We already have the full briefing from both sides, so your argument should be limited to responding to what he said. And then we also have a cross appeal, Your Honor, with respect to the 562, which is what I'd like to devote the bulk of my argument to. Thank you. Two issues with respect to claim construction on the 359. With due respect, I think it is precisely correct that what appellant is attempting to do is to take a limitation from the preferred embodiment and have it read on the claims when the language is nowhere found in the claims. If I can analogize the dispute here with respect to claim construction as if the correct signal structure was found on a page of a book, the dispute here is whether the claims require you to store in the universal remote control the chapter where that correct signal structure can be found or whether signal structure identification data also allows you to store the page where that correct signal structure can be found. And I respectfully submit there's nothing in the claims that limits signal structure identification data the way CMT would limit it. He uses the word define and you use the word limit, but you both use them in a very loaded way. Well, the point that I'm trying to make, Your Honor, is that the claim signal structure identification data is nowhere within the claims limited to the limitation that CMT would import from the preferred embodiment. And that's the point that I'm trying to make with respect to their argument with respect to whether signal structure identification data is broad enough to include really any information that directs you to the correct signal structure as stored in the remote when it's sold to the consumer. With respect to the district court's methodology, as I understand this court's decision in Phillips, it was really to make the point that the language... What difference does it make? He seems to concede that there's no per se error because of anything inconsistent with what Phillips said. So it looks to me like Phillips is out of this case. I'm more than happy to accept that concession, and I think the district court's methodology is perfectly correct in looking at... Does it even matter? If Judge Jordan came to the correct construction, even if his route of march, in hindsight, can be rejected, if he got the right answer, don't we have to affirm? It is surely correct that this court reviews judgments and not opinions, and certainly Judge Jordan did come to the correct result in interpreting and construing signal structure identification data to include the way the CMT device operates. If there are no further questions, with respect... I have a further question. You say it would just be importing a limitation, which, of course, is a no-no. So, you know, that's a very self-serving way to put it. He says, Mr. Blumenfeld says, the specification makes clear the one and only meaning that this patent conveys to somebody in the field, and it's a narrower meaning than the phrase in the claim, in the abstract, might have carried. So, you have your slogan, no importation of limitations from the spec into the claim. He has his slogan, the spec defines the meaning of the term, and neither is helpful. Well, I think, Judge, the correct analysis here is that the specification does not define signal structure identification data for the purposes of the claim. The specification uses the term signal structure identification... How are we to know? By simply reading the specification, Your Honor, I would suggest... Well, what would it need to say? What would it need to add at the end of the sentence? He quotes, and the preceding sentence is a definition meant to limit the otherwise broader meaning one might read into the claim phrase blah, blah, blah. I would suggest, Your Honor, that it has to be clear. I don't think it has to say it in hyc verba, in exact terms, that we're defining signal structure identification data for the purposes of the claims. Okay, then how do we decide whether it's clear? By applying the standard of one's ordinary skill in the art as to what one would take from reading the specification. I would also suggest to Your Honor is that defining the claims in a preferred embodiment, if that limitation is going to be imported into the claims, must be clear. And it certainly is not clear, and I would suggest to Your Honor that it is clear that this specification does not define signal structure identification data for purposes of the claim. It uses that term for purposes of describing the preferred embodiment. Did Judge Jordan rely significantly on any testimony from any practitioners of this technological art? He did not. That's what I thought, too. So, therefore, when you say it's all a question of what the artisan would make of this total document and the particularly relevant language scattered throughout, which, of course, is the legally correct standard. But how are we to know if we don't have the foundational evidence of expert testimony of how the artisan would have read these various phrases? Because I think it is abundantly clear, Your Honor, that there really is no room for dispute as to what the use of that term in the specification is. There just simply is no language in the specification from which one could reasonably conclude that it is meant to define that phrase with respect to its use in the claims. If I may, Your Honors, I'd like to move on to Philip's cross-appeal with respect to the advice. Mr. Vaney, before you do that, I have a question regarding the damages. Yes, Your Honor. The particular universal unit can be used in one of two ways. Is that correct? Correct, Your Honor. Is there any evidence in the record showing that the unit was being used in an infringing method? There's plenty of evidence in the record, Your Honor. There is evidence that this was used at trade shows to demonstrate its use. There was evidence that CMT's customers called and asked questions, how do I use this scan method? There was evidence that it was in the manuals. There was evidence that it was the only method that was actually printed on the universal remote control. There was evidence that it was the only method that consumers could have used if the code was not available because they'd lost the book some months ago. But there was an assumption that all of the units were being used in an infringing method. It wasn't an assumption, Your Honor. I think the issue was that, first of all, this is getting past the issue of waiver. All of the expert reports, all of the conferences in front of the judge, the pretrial order, this issue was not raised by CMT. And under Third Circuit law, it was waived. Under the local rule with respect to what's supposed to be in the pretrial order, every issue of factor law that the parties contend should be litigated under Rule 16D, local Rule 16D, had to be raised in the pretrial order. So the first issue with respect to damages is that there was no abuse of discretion, which is the correct standard. By the district court, that this was waived. Second of all, once you get past the waiver, and I respectfully submit that CMT clearly cannot, the issue really is what is a reasonable royalty and how is that reasonable royalty determined in a hypothetical negotiation. Both experts here who testified in front of the jury said that in a hypothetical negotiation, the parties would have agreed that a royalty would have been applied to all units capable of infringing. That's the way the case was tried. Were the jury instructions to that effect also? The jury instructions were not to that effect, but they also, the judge was quite clear in the charging conference that he was not going to give the jury an instruction that required evidence of each underlying use. But what the district judge did tell CMT in the charging conference, and this is at page 4567 and 68 of the record, is that, quote, I should note that in saying that I'm not accepting this language, that's the charge, I am not saying anything about the argument that a party can properly make based on the evidence that is in the case or not in the case. And what the district court was telling CMT was if they wished to argue that there was no evidence of underlying use and therefore in the hypothetical negotiation, the parties would not have agreed to an all-sales reasonable royalty. They were free to argue that, and they did not. But the legal issue, after there is evidence of infringement, as to which CMT admits in their brief that there was, the question then is what would the parties have agreed to as a reasonable royalty in the hypothetical negotiation? And both experts here, CMTs and Phillips, testified that the units to which the differing reasonable royalty would apply were all sales-capable infringing, which makes sense, actually, because, of course, there would be in a hypothetical negotiation, the parties would not go to the cost and the transaction cost of counting the underlying use of 5.7 billion units. I suppose, let's assume, for example, that there was some way of determining that only half of the time that these units were used was there an infringing use. If they were going to license on the basis of the total number of sales, that would be reflected in a lower licensing rate. In other words, instead of a dollar per unit, they might say, well, only 60 cents or 50 cents per unit. Precisely, Judge Freeman, and what the district court said to CMT was, is that if you want to argue to the jury that because there was a low level of evidence of underlying use, that the royalty rate would have been less, they were free to, they never did. Was there an objection to the jury instructions at that point? There was an objection by Phillips to a jury instruction that required evidence of underlying use rather than allowing the experts to testify as to what would have happened at a hypothetical negotiation. What about CMT? Did they object to it? I believe they did not weigh this issue. I believe they did object to it. With respect to the 562, if I may, Your Honor, there are three reasons why summary judgment of infringement should have been granted rather than summary judgment of non-infringement. First, even under the district court's claim construction, summary judgment of infringement should have been granted both because of literal infringement and because of infringement under the doctrine of equivalence. And second, the district court incorrectly construed the claim terms, and if a correct construction was given, the district court, excuse me, CMT admits there is infringement. I'd like to jump, if I may, to the one fundamental error that pervaded all of the proceedings below with respect to the construction of the 562 and the grant of summary judgment of non-infringement, and that has to do with the district court's interpretation of the specification. If Your Honor, please, we put up on the... You like some of what he did with the specification. We certainly did with respect to the first patent, Your Honor, but with respect to the 562, I think the district court... Did he change methods when he switched patents? He made a fundamental error in reading, which I'd like to explain to the court, if I may, which I think is evidence... Did he misread it? He did, Your Honor. And I'd like to show you what that was, if I may, by these charts that we have blown up. This is language from the specification of the 562 from the preferred embodiment of the 562. And what the district court did in its summary judgment opinion, in which it called the most persuasive evidence that Phillips had given up, the simultaneous pressing of two keys. Now, to take a very brief step back, the issue on construction of the 562 is whether the claims do not encompass the simultaneous pressing of two of the keys out of the three that are necessary to program under the 562 method. The 562 method requires the entry of a category of device, it requires the pressing of another key, which the patent calls the entry initiate key, and it requires the entry of the product code that contains the signal structure. What the district court concluded was is that CMT's device, and there's no dispute about this, does all three of those things, but the first two keys are pressed simultaneously. And that was the distinction that was made between the claims of the patent and the device, in which the district court concluded that summary judgment of non-infringement should be granted. Now, the error that permeated this entire analysis came from the preferred embodiment. The district court looked at the language in column five and came to the conclusion that this language at the end, that in any case, if the number of keys pressed exceeds one, the routine is not part of the present invention. Now, what the district court concluded was is that the routine referred to in column five was the 562, and the district court, therefore, concluded that if you press two keys, then the 562 invention was not implicated. And was that based on the fact that it spoke of pressing and a singular and rather than one or more? This interpretation that I just mentioned, Judge Friedman, is what led to the incorrect claim construction, which is what Your Honor just mentioned. But really what this column five says is nothing at all about the claims. It's important to understand that the preferred embodiment of the 562 contains more than the 562 method. What the preferred embodiment describes is both the 562 code entry method and the 359 learn method. And what this passage in preferred embodiment says is when a button is pressed in the universal remote control, how does that remote control know that it's a command like channel up or volume down, as opposed to I'm about to enter the programming. You have one minute left. Thank you, Your Honor. This column refers to the fact that if the 359 learn method is included, and it goes on to describe why the 359 should be included in case the code book is lost, that in the event two keys are pressed when the 359 is included, the number of keys pressed exceeds one and the routine is not part of the present invention. The routine referred to in column five, which incorporates figure three, is not the routine of the patent, which is what the district court said. It is the routine of the 359, and it is the routine of programming the VCR to record. And that's made clear by figure three. Figure three says if two keys are pressed, what does the remote know what to do? It says if it's the learn button, then you go on to use the 359 method. If it's another button, then you record on the VCR. But it is not the routine here that's described as not being part of the invention. It's not the 562. Time has expired. When it refers there to the present invention, do you say that refers to the 562 patent or the 359 patent? When they talk there of the present invention, isn't that referring to the 562 patent? Certainly the present invention is, but the error that the district court made was construing routine to be the present invention, the 562 code entry method. And that's clear in the district court's claim construction opinion, and it's clear in the district court's summary judgment opinion. I don't understand this. This is not that it's peculiar language, but why doesn't the routine definitely refer to the words in front of it? That is, the number of keys pressed exceeds one. The routine that's referred to in this column five is the routine on the right side of figure three, and it says that. And the routine on the right side of column three, Judge Friedman, is not the 562. It is the routine that the microprocessor goes to in the preferred embodiment that includes multiple methods of programming that says on the right side, I will incorporate either the 359 learn method or I will tell the VCR to record. So that if two buttons are pressed in the preferred embodiment, not in the claims, but if the two buttons are pressed in the preferred embodiment, what this language says is that that routine from those two buttons, the record or the 359, is not part of the 562. The district court read this as saying that the routine is the 562, which is not part of the present invention when two buttons are pressed. And that, I respectfully suggest, is clearly wrong from reading the specification and the preferred embodiment, and that led the district court to make errors with respect to claim construction and with respect to summary judgment. Thank you. Thank you, Your Honor. Mr. Blumenfeld, we'll restore two and a half minutes of your rebuttal time since we asked a lot of questions, and we'll do the same thing for you, Mr. Beeney, on the cross appeal. Thank you, Your Honor. I will respond only on the 562, and I only have a couple points to make. The first is that I think it's clear from Column 5 what they were saying, and that is the bottom of the first paragraph. In any case, the number of keys pressed exceeds one. The routine is not part of the present invention. But then you go on to the next paragraph, and it says, if the number of keys pressed is equal to one, the microprocessor first tests whether this is the record key. The record key is then defined as the enter-initiate key. Same thing. He has taken the initial step for implementing the present invention. So the first paragraph, they're saying if you press more than one key, it's not the invention. If you press one key, it is the invention. One thing that Mr. Beeney didn't address here is Claim 1 of the patent, which he did address in his brief. Claim 1 was amended to change ones to one, respective ones of said keys to respective one of said keys. One of the arguments they made in their brief was that that applied only to the category device keys and not to the entry-initiate key. And I want to make sure I clear that up, because that amendment from ones to one, which is clearly a limiting amendment and has whatever effects that has, was made in November of 1990. That's at page A1112 of the appendix. At the time that amendment was made, the said plurality of keys, including a predetermined group of keys, each representing a different one of said different categories of devices,  wasn't even in the claim. That was added to the claim by an amendment in July of 1993. That's 1189-90 of the appendix. So at the time that ones was changed to one, the category key was not even part of the claim. The only thing that the change from ones to one could have applied to was the entry-initiate key. Putting aside the specification, which I think supports us totally, as does the prosecution history, when you amend a claim to change ones to one and it has to apply to the entry-initiate signal and to the keys that provide the entry-initiate signal, I don't know how you can make any kind of argument that it can then be more than one key, either literally or by the doctrine of equivalence. Thank you. Thank you. Mr. Beeney. Thank you very much, Your Honor. Your Honor, I have no argument with Mr. Blumenthal about Column 5 with respect to the second paragraph. This is the preferred embodiment which uses two methods of programming, the patent method of the 562 and the 359. This column says nothing about limiting the 562, particularly when the 562 is used by itself or in conjunction with anything else. It says nothing about the 562, and the district court erred in construing it that way. If I may, Your Honor, just very quickly, if we can turn to the actual claim language. With respect to claim construction, the district court held that and was limited to only one, and I would like to respectfully suggest that that also was error. The patent in both the independent claims 1 and 9 is very clear about precisely the number of keys that it uses with respect to the three functions that initiate programming, code entry, the entry initiate key, and the entry of the program. In Claim 9, it's very clear that there is one key with respect to the code of the type of device, TV, VCR, whatever. The patent is very clear where it uses the indefinite and with respect to the entry initiate. It's very clear that with respect to the product code, it uses at least one. The same is true with respect to Column 5. In line 33, it talks about one of different categories of keys. In line 35, it talks about an entry initiate, the indefinite article an, and in line 34, it talks about at least one of the product code keys to enter the code for the device to be programmed. CMT's devices infringe literally. They use a key to enter the code. There is no dispute about that. They use a second key that tells the device that the code is about to be entered. There is no dispute about that. CMT's device then requires you to put in the code of the appliance. There is no dispute about that. There is literal infringement. The only distinction that CMT makes with respect to the device as compared to the claims is that the first two steps are simultaneous entry and the patent does not require it according to CMT. There is nothing in these claims I respectfully submit that limits those first two functions from being done simultaneously. In fact, the only order that's important in the claims is that the code of the appliance be entered after the first two steps, and that's why it says after said entry initiate key. Thank you. Thank you, Your Honor. We thank both counsel. The appeal is taken under submission.